IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3049-FL

| | | |
|---|---|---|
| WALTER TIMOTHY GAUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| FRANK ZIMMERMAN, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on the parties' cross-motions for summary judgment (DE 113, 121, 125) and plaintiff's motion to liberally construe his summary judgment submissions (DE 122). The motions have been briefed fully and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint February 2, 2022, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Pursuant to the operative amended complaint filed May 25, 2022, plaintiff claims defendant, a corrections officer, used excessive force September 15, 2021, in an alleged assault on plaintiff at the Pasquotank Correctional Institution ("P.C.I."), in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages, together with various forms of declaratory relief.

---

[1] The case caption reflects dismissal of formerly named defendants Warden Vonn, Captain Stockley, and Lieutenant Lassiter.

Following a period of discovery, and in accordance with the court's scheduling order,[2] defendant now moves for summary judgment on the basis that plaintiff failed to exhaust his administrative remedies. In support, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) declaration of Alex Williams, defendant's counsel; 2) plaintiff's offender information from the Department of Adult Correction's ("DAC") public website; 3) plaintiff's disciplinary history; 4) affidavit of Kimberly Grande, the executive director of the DAC's inmate grievance resolution board; and 5) plaintiff's administrative grievance records.

Plaintiff responded in opposition to defendant's motion, relying on response brief and previous filings on the court's docket including the following: 1) plaintiff's original and amended complaints at docket entries one and 13; 2) administrative grievance records attached to plaintiff's first motion for leave to file documentation at docket entry 14-1; 3) plaintiff's personal affidavits at docket entries 106 and 107;[3] 4) memorandum in opposition to defendant's motion for leave to file dispositive motion at docket entry 108; and 5) exhibits to plaintiff's second motion for leave to file documentation at docket entry 74.

After filing his response to defendant's motion, plaintiff filed the instant two cross-motions for summary judgment and motion to liberally construe his summary judgment submissions, relying on the same previous filings noted above. Defendant filed reply in further support of his motion for summary judgment and incorporated therein response to plaintiff's motions. In support of the reply, defendant relies on the DAC's administrative remedy procedure, additional

---

[2]     On December 5, 2024, the court granted defendant's motion for leave to file dispositive motions out of time.

[3]     Notably, the affidavits at docket entries 106 and 107 are identical.

grievance records related to the use of force incident, and correspondence tracking system for plaintiff's grievances and other requests.

## DISCUSSION

A.      Defendant's Motion for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[4]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).   "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.   In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

---

[4]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

[non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

As noted, defendant raises the affirmative defense that plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust administrative remedies even if the relief requested is not available under the

4

administrative process. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." <u>Wilcox v. Brown</u>, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002)); <u>Moore v. Bennette</u>, 517 F.3d 717, 729 (4th Cir. 2008).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007). And the PLRA mandates "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. <u>Woodford</u>, 548 U.S. at 83, 90. Thus, an inmate has not exhausted administrative remedies unless he receives a decision "on the merits" of his grievance and complies with all procedural requirements for appealing the result. <u>See</u> <u>id.</u> at 90.

The DAC's administrative remedy procedure ("ARP") prescribes a three-step procedure that inmates must complete to exhaust administrative remedies. (<u>See</u> ARP (DE 124-1) § 0310)[5]; <u>see also</u> <u>Moore</u>, 517 F.3d at 721 (describing policy). The ARP first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. (ARP (DE 124-1) § 0301(a)). If informal resolution is unsuccessful, the ARP provides the inmate may file a written grievance on form DC-410 ("step one"). (<u>Id.</u> §§ 0304(a), 0310(a)). If the inmate is not satisfied with the decision reached at the step-one level, he may request relief from the facility head ("step two"). (<u>Id.</u> § 0310(b)(1)). If the inmate is not satisfied with the decision

---

[5]     Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

reached by the facility head, he may appeal to the Secretary of DAC through the inmate grievance examiner ("step three"). (Id. § 0310(c)). The decision by the Inmate Grievance Examiner or a modification by the Secretary of DAC shall constitute the final step of the procedure. (Id. § 0310(c)(6)).

Several of the ARP's procedural requirements are pertinent here. Inmates must file step-one grievances within 90 days of the incident giving rise to the complaint. (Id. § 0306(c)(2)). As a general rule, "an inmate may submit a new grievance [only] after a pending grievance has completed step 2 review or has been resolved." (Id. § 0304(b)). The ARP also provides that "within three days after submission of the grievance, the inmate who submits the grievance will be notified of acceptance or rejection [for procedural reasons] in writing upon the appropriate form." (Id. at § 0307(b)).

Here, plaintiff filed his first grievance related to the alleged assault by defendant October 6, 2021, (hereinafter the "first assault grievance"), which the step-one grievance reviewer rejected that same day because plaintiff had another, unrelated grievance that was pending and that had not proceeded past step two review. (First Assault Grievance (DE 124-2) at 1–3). As a result, plaintiff did not proceed through step three as to the first assault grievance. (See id.).

The grievance that was in progress October 6, 2021, was an unrelated grievance in which plaintiff alleged that P.C.I. officials colluded with gang members and permitted them to exercise authority over other inmates, thereby creating unsafe conditions of confinement (hereinafter the "collusion grievance"). (See Collusion Grievance (DE 116-5) at 2–4). Corrections officials completed step-two review of the collusion grievance October 11, 2021. (Id. at 6). Then, on November 1, 2021, the inmate grievance examiner completed step-three review of the collusion

6

grievance. (Collusion Grievance (DE 116-5) at 1; Grande Decl. (DE 116-4) ¶ 11).

Because the ARP allowed plaintiff to file a grievance regarding the September 16, 2021, assault up to 90 days after the incident and plaintiff's first assault grievance was rejected on procedural grounds, he still had until December 15, 2021, to file a new grievance regarding the alleged assault.[6] (ARP (DE 124-1) § 0306(c)(2); First Assault Grievance (DE 124-2) at 1 (stating assault occurred September 16); see also Compl. (DE 1) at 5). But plaintiff failed to exhaust any grievance related to the alleged assault after the collusion grievance completed step-three review. (Grande Decl. (DE 116-4) ¶ 11). Accordingly, plaintiff did not exhaust administrative remedies for his claim based upon the alleged assault.

Plaintiff argues that the administrative remedy procedure was unavailable to him because he attempted to file new grievances relates to the alleged assault and did not receive a response. Under the PLRA, inmates must exhaust only "available" administrative remedies. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 642–44 (2016). An administrative remedy procedure is unavailable if the "procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the actions complained of.'" Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 642–43). The Supreme Court has identified three circumstances where an administrative remedy procedure is not capable of use to obtain relief: 1) where the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically

---

[6] As noted, plaintiff's first assault grievance was "rejected" because the collusion grievance was in progress at the time. (First Assault Grievance (DE 124-2) at 3). Accordingly, subsequent grievances related to this same alleged assault are new grievances (with new dates of submission and new tracking numbers, although plaintiff doesn't provide the tracking numbers). For ease of reference, the court distinguishes plaintiff's subsequent grievances related to the alleged assault by using nomenclature "first assault grievance," "second assault grievance," or "third assault grievance."

speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335.

Plaintiff relies on two instances where he allegedly attempted to file new grievances relating to the alleged assault to show that the ARP was unavailable in this instance. First, on October 20, 2021, plaintiff "filed grievance [regarding the] incident allege[d] . . . in this lawsuit and gave [it] to unit sergeant in segregation housing" (hereinafter "second assault grievance"). (Pl's Aff. (DE 106) at 2). DAC staff, however, did not respond to the second assault grievance as required by policy. (Id.). Separately, after plaintiff was transferred to the Scotland Correctional Institution ("S.C.I."), he filed another grievance October 24, 2021, concerning the alleged assault on (hereinafter the "third assault grievance"), by handing same to unit sergeant Jackson, and he also did not receive a response to the third assault grievance. (Id.). Plaintiff also "tried to file a[] step [three] appeal due to not receiving [a] response to [the foregoing grievances] [by mailing the appeal on November 30, 2021] to [the DAC] commissioner['s] office," (hereinafter "the attempted step-three appeal") but he did not receive a response to the attempted step-three appeal either. (Id. at 2–3).[7]

In the unique circumstances presented here, plaintiff's evidence does not raise a genuine dispute of fact as to the PLRA's availability exception. First, the fact that plaintiff exhausted three separate, unrelated grievances between August 20, 2021, and August 31, 2022, itself suggests the ARP was available to plaintiff. See Moss v. Harwood, 19 F.4th 614, 622 (4th Cir. 2021)

---

[7] In addition, plaintiff filed copies of the October 20 and 24 grievances and the step-three appeal as exhibits to his original complaint (DE 1-1 at 8–13). The court observes that none of these grievances include the required "receiving officer signature" at the bottom. (See id.).

8

(concluding in the specific context presented that "evidence of access to the grievance system conclusively refutes [plaintiff's] allegation that the . . . administrative remedies were not available to him"); (Grande Decl. (DE 116-4) ¶ 11). Notably, in the collusion grievance filed in August 2021 and which completed step-three review November 1, 2021, plaintiff alleged serious misconduct against P.C.I. officials, establishing that plaintiff was not prevented from filing grievances alleging staff misconduct at P.C.I. See Moss, 19 F.4th at 622 (discussing rule that administrative remedies can be unavailable for certain topics but available for others); (Collusion Grievance (DE 116-5) at 1–6). Moreover, even if the three grievances related to the alleged assault are distinguishable from the allegations regarding collusion with gang members in the collusion grievance, plaintiff argues only that the ARP was unavailable to him as a general matter, and not as to specific topics. See Moss, 19 F.4th at 622 (rejecting similar argument where plaintiff failed to explain "why he was able to file some – indeed, many – grievances and requests while on lockdown but not the one required here").

Second, while the failure to respond to grievances may establish the administrative remedy procedure is unavailable under appropriate circumstances, the two instances of lost or mishandled grievances offered by plaintiff here are insufficient. See id. (failure to exhaust is evaluated under the precise circumstances presented); Griffin, 56 F.4th at 335–39 (same). Importantly, the second and third assault grievances were filed during a five-day period between October 20 to 24, 2021, during which time plaintiff was transferred to the S.C.I. (Pl's Aff. (DE 106) at 2). And, as detailed below, plaintiff offers no evidence suggesting that he followed up with prison officials about these missing responses, re-filed the second and third assault grievances after not receiving a response, or otherwise attempted to access the grievance system after October 24, 2021, with the

9

exception of the procedurally defective attempted step-three appeal to the DAC commissioner. (See id. at 2–3; Compl. Exs. (DE-1-1) at 8–13).

Pursuant to the "time limits" section of the ARP, "within three days after submission of the grievance, the inmate who submits the grievance will be notified of acceptance or rejection in writing upon the appropriate form." (ARP (DE 124-1) § 0307(b)). In compliance with this requirement, plaintiff received notification that the first assault grievance was rejected the same day he filed it. (First Assault Grievance Rejection Notice (DE 14-1) (filed by plaintiff before any discovery in this litigation)). And plaintiff attests that he received no response to the second or third assault grievances, which would have included the notice that his grievance was accepted or rejected within three days. (See Pl's Aff. (DE 106) at 2). Thus, by October 28, 2021, when plaintiff had not received notification that the second and third assault grievances had been accepted or rejected, he would have known that same had not made their way to the appropriate screening officer. (See ARP (DE 124-1) § 0307(b)).

As noted above, as of October 28, plaintiff still had 47 days, until December 15, to file a grievance related to the assault. (See id. (providing rule that grievances must be filed within 90 days of incident); Grievance No. 16271 (DE 124-2) at 1 (stating assault occurred September 16)). But, with one exception noted below, plaintiff took no action to re-file the pertinent step-one grievance regarding the assault or otherwise alert staff that his second and third assault grievances had not been processed. (See Pl's Aff. (DE 106) at 2 (stating only that he did not receive response to these grievances)). Nor does plaintiff offer any competent evidence suggesting the administrative remedy procedure was unavailable to him during the 47-day period remaining to file the pertinent grievance. As defendant notes, plaintiff simply took no action during this period

10

to access the grievance procedure notwithstanding the fact that he did not receive the three-day notice alerting him that the second and third assault grievances were accepted or rejected, and that he exhausted other grievances during this general timeframe. (ARP (DE 124-1) § 0307(b); Grande Decl. (DE 116-4) ¶ 11).

The one exception is the attempted step-three appeal plaintiff allegedly filed with the DAC Commissioner of Prisons on November 30, 2021, wherein he complained that prison officials were not responding to his grievances. (Pl's Aff. (DE 106) at 2–3; Compl. Exs. (DE 1-1) at 12–13). The attempted step-three appeal, however, did not comply with the ARP's procedural requirements. To the extent plaintiff in the attempted step-three appeal was relying on the ARP provisions permitting inmates to file confidential grievances directly with the commissioner, plaintiff failed to comply with the policy requirement that "the inmate must clearly explain the nature of the complaint and the reasons for not following the regular grievance procedure." (See ARP (DE 124-1) § 0309; Compl. Exs. (DE 1-1) at 12–13). And if plaintiff alternatively was attempting to appeal the constructive denial of either the second or third assault grievances because officials failed to respond to same, the ARP requires submission of step-two appeals to the facility head, commonly known as the warden, as opposed to the DAC commissioner. (ARP (DE 124) § 0310(b)(1)). Thus, plaintiff's attempted step-three appeal did not comply with the ARP and it is therefore ineffective to show that the ARP was unavailable or that plaintiff exhausted administrative remedies. See Woodford, 548 U.S. at 83, 90 (noting "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement).

In sum, DAC officials' failure to respond to the second and third assault grievances filed

11

over a five-day period, and their failure to respond to the procedurally deficient attempted step-three appeal, does not establish a genuine dispute of fact as to the availability of administrative remedies where: 1) the collusion grievance plaintiff filed during this same time frame alleging staff misconduct by P.C.I. officials was processed through step three; 2) plaintiff was on notice by October 28 that the second and third assault grievances had not been processed; 3) plaintiff still had 47 days to re-file a timely grievance under the ARP but he failed to take any action to do so; and 4) plaintiff offers no evidence suggesting the procedure was unavailable to him during this 47-day period. See Moss, 19 F.4th at 622 (affirming grant of summary judgment where record showed that plaintiff had access to grievance system during relevant timeframe but failed to make use of it, despite the fact that officers had "refused his requests for forms or access to the [electronic system for filing grievances]").

Third, plaintiff's transfer to S.C.I. is relevant to the analysis because generally administrative exhaustion through step-two is conducted at the facility where the inmate is housed.[8] (See ARP (DE 124-1) § 0310(a)-(b)); see also Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) ("The fact that Hill filed a great number of complaints in other prisons is irrelevant to the issue of whether his efforts to file grievances were obstructed at USP–Hazelton."). Here, with the exception of one mishandled grievance (the third assault grievance), plaintiff fails to offer any evidence suggesting the ARP was unavailable to him at the S.C.I. (See Pl's Aff. (DE 106) at 2). This one mishandled or lost grievance is simply insufficient standing alone to establish that the ARP was unavailable to plaintiff after his transfer. Moss, 19 F.4th at 622; compare Griffin, 56 F.4th at 332–33, 335–39 (holding genuine disputes of material fact precluded summary

---

[8]     The ARP does provide that grievances filed prior to transfer should be completed at the sending institution through step-two and then forwarded to the warden of the receiving institution. (ARP (DE 124-1) § 0311).

judgment where prison officials declined to consider grievance due to another pending grievance and did not resolve the pending grievance until after the 90-day time limit expired); Hill v. Haynes, 380 F. App'x 268, 271, 273 (4th Cir. 2010) (noting plaintiff demonstrated prison officials repeatedly failed to respond to initial grievances and rejected his appeals due to the absence of step-one responses).

In sum, plaintiff fails to establish a genuine dispute of fact as to whether the ARP was unavailable. Accordingly, defendants are entitled to judgment as a matter of law on their exhaustion defense.

C.    Plaintiff's Motions

Plaintiff seeks summary judgment on the merits of his claims. (DE 121, 125). The court, however, cannot reach the merits where plaintiff failed to exhaust administrative remedies. See Jones, 549 U.S. at 211 ("[U]nexhausted claims cannot be brought in court."). As a result, plaintiff's cross-motions for summary judgment must be denied as moot. As for plaintiff's motion for "liberal construction" of his summary judgment filings, this motion is granted. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). As set forth above, the court reviewed plaintiff's filings in the light most favorable to him and drew all reasonable inferences in his favor. See id.; Anderson, 477 U.S. at 255. However, even under this standard, plaintiff fails to establish genuine dispute of fact on the exhaustion issue for the reasons explained above.

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 113) is GRANTED and plaintiff's cross-motions (DE 121, 125) are DENIED as moot. Plaintiff's motion

13

for liberal construction of his summary judgment submissions (DE 122) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of March, 2025.

LOUISE W. FLANAGAN
United States District Judge